IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08–cv–01649–WYD–KMT

ELI C. ANDRADE,

      Plaintiff,

v.

EVAN CHRIST/Executive Director of T.T.C.,
DINO MARTINEZ/Program Director T.T.C.,
ALLYSON WEIKLE/Case Mgr of T.T.C., and
DANA MADRID/Westminster Parole Office Liaison for T.T.C.,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case involves claims that Defendants violated Plaintiff's rights under the Eighth and Fourteenth Amendments. This matter is before the court on the "TTC Defendants' Combined Motion to Dismiss and for Summary Judgment" ([Doc. No. 36] [filed April 6, 2009] [hereinafter "Mot."].) Plaintiff filed the Response on May 6, 2009. ([Doc. No. 39] [hereinafter "Resp."].) Defendants filed the Reply on May 20, 2009. ([Doc. No. 40] [hereinafter "Reply"].) Jurisdiction is premised upon 42 U.S.C. § 1983 (2008).

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Amended Prisoner Complaint ([Doc. No. 9] [filed October 21, 2008] [hereinafter "Compl."]) and the parties' submissions with respect to this Recommendation. Prior to filing this lawsuit, Plaintiff was an inmate housed at the Crowley County Correctional Facility (hereinafter "CCCF"). (Compl. at 7, 20, 23.) Plaintiff was transferred from CCCF to Time to Change Community Corrections Facility (hereinafter "TTC") on September 19, 2007 (*id.*), a facility also known as a "halfway house," and was a resident there during the time period relevant to this litigation (*id.* at 2). Plaintiff's placement at TTC was conditioned upon his attendance at "weekly anger/addiction group therapy" sessions. (Mot., Ex. A-7; Resp., Ex. A-1.) On September 25, 2007, Plaintiff signed a "Program Plan Contract" ordering him to comply with "all aspects and requirements of his program plan" at TTC, including "[t]reatment attendance and compliance." (Mot., Ex. A-8.) The "Program Plan Contract" also stated that "[v]iolation of any . . . of the program plan requirements [would] result in disciplinary actions against [him] . . . [and would] result in [his] placement at [TTC] to be reviewed." (*Id.*)

Plaintiff alleges that during his placement at TTC, he continued to suffer from several staph-infected, abscessed, open wounds in his abdomen with "suture granulomas protruding through the skin" that were in need of surgery (hereinafter "the abdominal condition").[1] (Compl.

---

[1] This continuing medical condition which originated from a gunshot wound received by Plaintiff prior to his incarceration, has been the subject of several prior and current lawsuits filed by Plaintiff in the United States District Court for the District of Colorado. *See Andrade v. Adams County Detention Facility, et al.*, 06–cv–01377–ZLW–KMT; *Andrade v. Oba, et al.*,

at 5, 7.) Plaintiff claims he suffered "constant abdominal pain, [and] bleeding on a daily basis." (*Id.*) Plaintiff alleges that he was "denied . . . a physical examination and proper pain medication" while at TTC (*id.* at 9), and went "29 days without prompt medical attention while [there]" (*id.* at 5). Plaintiff states that he was scheduled for surgery on September 6, 2007 costing $50,000 to address this condition, but was unable to have surgery because Defendants "denied responsibility to pay." (*Id.* at 12, 18; Ex. B at 1.)

During the time relevant to this litigation, Defendant Evan Crist (hereinafter "Crist") was Executive Director of TTC. (Mot., Aff. of Evan Crist, ¶ 1 [hereinafter "Crist Aff."]; Compl. at 8.) Plaintiff claims Defendant Dino Martinez (hereinafter "Martinez") was Program Director at TTC during this time (Compl. at 8), and that Defendant Allyson Weikle (hereinafter "Weikle") was Plaintiff's Case Manager while at TTC.[2] (*Id.* at 1, 9.) Plaintiff claims Defendants Crist and Martinez "run[] [the] facility," and that he was housed "under authority of Evan Crist, Dino Marinez, [and] Allyson Weikle." (*Id.* at 6, 8.)

In Claim One, Plaintiff alleges that Defendants Crist, Martinez and Weikle failed to review his medical history, and to provide medical attention, an examination or pain medication for his abdominal condition upon his arrival at TTC. (*Id.* at 7–9.) Plaintiff claims this constituted "deliberate indifference . . . in violation of [his] Eighth and Fourteenth Amendment rights." (*Id.* at 9, 28.) In Claim Two, Plaintiff states that upon reviewing documents referring

---

07–cv–00872–WYD–KMT; *Andrade v. Martinez, et al.*, 08–cv–01098–ZLW–KMT.

[2] Hereinafter, Defendants Crist, Martinez, and Weikle shall be collectively referred to as the "TTC Defendants" where appropriate.

him for surgery to treat his abdominal condition, Defendants Crist, Martinez and Weikle "denied responsibility to pay for the surgery and . . . insisted that [Plaintiff] keep looking for help elsewhere." (*Id.* at 12, 18.) In Claim Three, Plaintiff asserts that he was "regressed [to CDOC custody] for trying to get medical help." (*Id.* at 18.) However, Plaintiff did not set forth the exact constitutional grounds for his Claims Two and Three.

Plaintiff has brought this section 1983 action against Defendants Crist, Martinez and Weikle, in their individual capacities only. Plaintiff seeks punitive damages for "pain and suffering, lack of medical attention, denial of surgery, . . . confusion[,] torment[,] agony[,] . . . deprivation of sleep, lost opportunities, undue hardship[,] physical deprivation[,] psychological trauma[,] physical trauma[,] mental anguish[,] [and] deprivation of medical rights." (*Id.* at 28.) Defendants move to dismiss on the following grounds: 1) Plaintiff has failed to state an Eighth Amendment claim upon which relief may be granted; 2) Plaintiff's wrongful regression claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); 3) Plaintiff's claims are barred for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (hereinafter "PLRA"); and 4) Plaintiff's claim for compensatory damages is barred under the PLRA for failure to allege physical injury. (Mot.)

**LEGAL STANDARD**

*1.* **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also*

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### 2.      *Fed. R. Civ. P. 56(c) – Summary Judgment*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006).

A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## LEGAL ANALYSIS

*1.   Prison Litigation Reform Act*

   *A.   Physical Injury Requirement*

Defendants contend that Plaintiff's section 1983 claims must be dismissed because the Complaint does not satisfy the prior physical injury requirement of 42 U.S.C. § 1997e(e). (Mot. at 14–15.) Section 1997e(e) of the PLRA provides in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42

U.S.C. § 1997e(e) (2008). Plaintiff has clearly alleged physical injury in the form of a lack of treatment for "abcessive [sic] open wounds [on his abdomen]." (Compl. at 5, 7.) While Plaintiff does not claim Defendants Crist, Martinez and Weikle caused this injury, he does allege the defendants caused him unwarranted physical pain associated with the injury by their failure to obtain medical treatment for him. (*Id.*) This allegation is sufficient to satisfy section 1997e(e) and Defendants' Motion is properly denied on this basis.

### B. *Exhaustion of Administrative Remedies*

Defendants also move for dismissal of Plaintiff's claims based upon his failure to exhaust administrative remedies pursuant to the PLRA. (Mot. at 12–14.) Prior to filing this civil action, Plaintiff was required to exhaust administrative remedies pursuant to the PLRA. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The PLRA provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2008).

In order to exhaust administrative remedies, prisoners must complete the administrative review process defined by the prison grievance process. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. Rather, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

Since Plaintiff was housed at TTC during the time relevant to this action, the applicable grievance procedure is stated in the "TTC Residential House Policies & Rules and Regulations." (Mot., Ex. A-3 at 3.) TTC residents may file a "Writ of Grievance" for any type of complaint to which they wish to receive a response. (*Id.*) Exhaustion of administrative remedies at TTC requires the completion of an initial writ, an appeal to the Program Director, and an appeal to the Executive Director whose "decision is final." (*Id.*) Defendants' Motion asserts that Plaintiff failed to file writs pertaining to the allegations set forth in the Complaint. (Mot. at 13.) In his Response, Plaintiff does not dispute Defendants' assertion, but attaches copies of two writs of grievance filed February 6, 2008 (Resp., Ex. A-6) and February 18, 2008 (*id.*, Ex. A-7). Neither writ addresses Plaintiff's allegations against Defendants Crist, Martinez and Weikle concerning deliberate indifference to serious medical needs or a wrongful regression to CDOC. Moreover, Plaintiff has provided no indication that he appealed either writ to the Program Director or the Executive Director.

The court finds that Defendants have shown an absence of evidence to support Plaintiff's assertion that he exhausted administrative remedies, and that Plaintiff has failed to demonstrate that a genuine dispute exists as to this issue. Accordingly, the court recommends that summary judgment be granted in favor of Defendants on Plaintiff's Claims One, Two and Three for failure

to exhaust administrative remedies as required by the PLRA. Nevertheless, the court will address these claims on the merits as well.

### 2.     *Claims One and Two – Violation of Eight Amendment*

Defendants contend that Plaintiff's Eighth Amendment claims—Claims One and Two—should be dismissed because Defendants owed "no duty" to provide medical treatment to Plaintiff. (Mot. at 6.) The Eighth Amendment prohibits prison officials from showing deliberate indifference to the serious medical needs of prisoners, causing the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Estelle*, the Supreme Court held that the Eighth Amendment requires a state to provide adequate medical care to incarcerated prisoners because a prisoner is unable "by reason of the deprivation of his liberty [to] care for himself." *Id*. Thus, an affirmative duty to provide such care arises "[o]nly where the state has exercised its power so as to render an individual unable to care for himself or herself." *Doe v. Douglas County School Dist. RE-1*, 770 F. Supp. 591, 593 (D. Colo. 1991) (citing *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 198–200 (1989) (noting that the government's "affirmative duty to protect arises not from [its] knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf")); *Estelle*, 429 U.S. at 103 (1976) (discussing the government's obligation under the Eighth Amendment "to provide medical care for those whom it is punishing *by incarceration*") (emphasis added); *Wideman v. Shallowford Community Hospital, Inc.*, 826 F.2d 1030, 1035–36 (11th Cir. 1987) ("The key concept is the exercise of dominion or restraint by the state. The state must somehow significantly limit an individual's

freedom or impair his ability to act on his own before it can be constitutionally required to care and provide for that person.").

Plaintiff does not dispute records presented by Defendants which show that during his placement at TTC, from September 27, 2007 and March 20, 2008, Plaintiff signed out twenty-nine times to visit eleven different healthcare-related destinations.[3] (Mot., Ex. A-5a, A-5b, A-5c; *see* Resp., Ex. A-2.)  Plaintiff concedes that he signed out of TTC to go to "Inner City Health" and "La Casa Quigg Newton" in September 2007, within days of his transfer to TTC. (Resp., Ex. A-2.)  A TTC "Medical Referral Form" dated October 19, 2007, completed and signed by Dr. Price, is attached to Plaintiff's Complaint and contains Dr. Price's diagnosis and treatment orders for Plaintiff's abdominal condition. (*Id.*, Ex. E.)  Dr. Price's referral form was issued one month *after* Plaintiff was released to TTC. (*Id.*)  Plaintiff clearly pursued and received medical attention on his own volition while a resident of TTC.  His numerous, documented trips to medical facilities demonstrate a wide-ranging ability to pursue medical treatment while a resident of TTC.

Furthermore, Plaintiff does not allege that either Defendant Crist, Martinez or Weikle intentionally denied or delayed his access to medical care or intentionally interfered with his treatment.  *See Estelle*, 429 U.S. at 104–05.  To the contrary, the Affidavit of Evan Crist states,

---

[3] During this time, Plaintiff signed out of TTC to: "Inner City Health" twice; "La Casa Quigg Newton" twice; "Denver Health" three times; "Dr. Nickel" twice; "North Suburban Hospital" once; "Jeffco Clinic" three times; "Estes Clinic" eleven times; "University Hospital" twice; "State Board of Medical Exam" once; "Medical Examiner" once; and "Jeffco Pharmacy" once. (Mot., Ex. A-5a, A-5b, A-5c.)

and Plaintiff fails to dispute, that "[w]hile at TTC, Andrade was advised and encouraged on various occasions by TTC Defendants and/or other members of the TTC staff to seek medical attention outside of TTC." (Mot., Crist Aff., ¶ 11.) Plaintiff's Complaint shows that TTC staff referred him to "La Casa Quigg Newton" for medical assistance and to the Colorado Indigent Care Program. (Compl. at 24.)

Plaintiff appears to hold Defendants Crist, Martinez, and Weikle responsible for his inability to pay for his treatment. Plaintiff specifically alleges that Defendants Crist, Martinez and Weikle refused to pay for his $50,000 surgery. (*Id.* at 12.) However, the record shows that upon placement at TTC, Plaintiff assumed full financial responsibility for his medical expenses. Upon admission to TTC on September 19, 2007, Plaintiff executed a "Release of Liability and Permission to Provide Emergency Medical Care." (Mot., Ex. A-2 at 1.) That document, which bears Plaintiff's signature, states: "I understand that I am personally and solely responsible for all of my medical expenses . . . I may incur while at the [TTC] Program." (*Id*.) Furthermore, on September 19, 2007, Plaintiff signed the TTC "Residential House Policies & Rules and Regulations" form which states:

> If a client requires medical attention, staff will provide assistance in locating and/or facilitating the transfer of a client to a physician or hospital. Clients are responsible for all medical expenses incurred while under the supervision of the [TTC] Community Corrections Program.

(*Id.*, Ex. A-3 at 4–5.)

Additionally, Plaintiff does not allege that his ability to pay for such treatment was in any way obstructed by either Defendant, or the State of Colorado's exercise of its power. Moreover,

from January 23, 2008 to March 21, 2008, Plaintiff signed out of TTC to "American Modular," where "[he] maintained employment . . . completing assembly work," a total of sixteen times. (*Id.*, Ex. A-10 at 4; Ex. A-5b at 6; Ex. A-5c at 2–7.) Plaintiff's total income during his placement at TTC was $4,669.66. (*Id.*, Ex. A-10 at 3.) The record also shows that Plaintiff was allowed to sign out of TTC to travel to a variety of non-medical destinations from September 27, 2007 to March 20, 2008 while residing at TTC. (*Id.*, Ex. A-5a, A-5b, A-5c; Resp., Ex. A-2.) For example, Plaintiff signed out to visit the DMV (*id.*, Ex. A-5a at 2), Social Security Administration (*id.* at 3), Valley Bank (*id.* at 6), Walgreen's (*id.*), and the Department of Revenue (*id.*, Ex. A-5b at 6). This record, which Plaintiff does not dispute, does not indicate that Plaintiff was unable to care for himself.

Plaintiff has failed to demonstrate that a genuine dispute exists as to any material fact connected to Defendants' demonstrated lack of duty to provide specific medical treatment for Plaintiff, and summary judgment is appropriate in favor of Defendants on Plaintiff's Claims One and Two.

### *3.   Claim for Improper Regression to CDOC*

While Plaintiff claims that he was "regressed [to CDOC custody] for trying to get medical help," he fails to designate the constitutional right that was allegedly violated. (Compl. at 18.) Defendants argue that Plaintiff's allegation that his removal from placement for service of his sentence at TTC to the CDOC was improper implicates the validity of his sentence to the CDOC. (Mot. at 9–11.) In *Heck v. Humphrey*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in

12

favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The rule in *Heck* also applies to "proceedings that call into question the fact or duration of parole or probation." *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (per curiam). Insofar as Plaintiff's Claim Three implies the invalidity of his parole revocation and his return to a more restrictive CDOC facility, his claim for damages is barred under *Heck*.

In any event, reviewing the pleadings liberally, as this court must under *Trackwell*, 472 F.3d at 1243, no constitutional violation is apparent to the court. Defendant Crist's Affidavit states that Plaintiff "failed to attend four required treatment sessions" while a resident at TTC. (Crist Aff., ¶ 25.) The April 17, 2008 "Termination Report" states that on March 26, 2008 Plaintiff's TTC placement was terminated due to "House/Technical Violation[s]." (Mot., Ex. A-10 at 2; *see* Crist Aff., ¶ 28.) Specifically, Defendants contend his discharge was a result of "a Class II-25 Disobeying a Lawful Order violation issued after missing four treatment sessions with Correctional Psychology Associates (CPA)." (*Id.* at 3.) At that time, Plaintiff was "release[d] to[] D.O.C./Jail Incarceration" at the Adams County Jail after receiving notice of the charges against him and pleading guilty at a formal hearing. (*Id.* at 2–3; *see* Crist Aff., ¶ 30; Compl. at 23, 19.) Plaintiff's Complaint is devoid of factual support for his claim of improper regression due to complaints of medical needs, and Plaintiff's Response fails to dispute the records produced by Defendants. Consequently, Plaintiff has failed to demonstrate a genuine

issue of material fact for trial on this issue and Defendants are entitled to judgment as a matter of law on Claim Three.

### *4.* *Qualified Immunity*

Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When analyzing the issue of qualified immunity, the court must determine (1) whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right; and (2) whether the right was clearly established at the time of the violation. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009). It is not enough to show that right exists generally, e.g., the right to be free from cruel and unusual punishment. In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Id.* at 818. The plaintiff bears a heavy two-part burden in establishing that the defendant violated clearly established law. *Teague v. Overton*, 15 F. App'x 597, 600 (10th Cir. 2001). "When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

Since the court previously found no constitutional violations exist as to Plaintiff's Claims One, Two and Three, Defendants are entitled to qualified immunity. Further, the law was not, and still is not, clearly established that community corrections facility staff have an Eighth Amendment duty to provide and/or pay for medical care for an offender who has the ability to sign out of the facility and is employed. Defendants, therefore, are also entitled to qualified immunity because Plaintiff has failed to show that the right at issue was clearly established law at the time it was allegedly violated.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that the "TTC Defendants' Combined Motion to Dismiss and for Summary Judgment" (Doc. No. 36) be **GRANTED**, and that Summary Judgment be entered in favor of Defendants Crist, Martinez and Weikle as to all claims stated against them, and that this case be **DISMISSED** in its entirety, with prejudice.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As*

*2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 25th day of August, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge